IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE ESTATE OF DENISE SHORT,
BY AND THROUGH KIERRA CALHOUN,
AS ADMINISTRATRIX, AND KIERRA CALHOUN,
ON BEHALF OF THE WRONGFUL DEATH
DENEFICIARIES OF DENISE SHORT                                    PLAINTIFF

VS.                              CIVIL ACTION NO. 3:24-CV-00293-HTW-LGI

MISSISSIPPI DEPARTMENT OF CORRECTIONS,
BURL CAIN, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES AS THE COMMISSIONER OF THE
MISSISSIPPI DEPARTMENT OF CORRECTIONS,
JOHN HUNT, IN HIS INDIVIDUAL, ET AL                              DEFENDANTS

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, COMMISSIONER BURL CAIN, JOHN HUNT, TEREDA HAIRSTON, BENJAMIN JENNINGS, AND ANGELA SMITH'S MOTION TO DISMISS**

---

Defendants the Mississippi Department of Corrections ("MDOC"), Commissioner Burl Cain, John Hunt, Tereda Hairston, Benjamin Jennings, and Angela Smith (collectively "MDOC Defendants") are entitled to dismissal of all claims against them under Fed. R. Civ. P. 12(b)(1) and (12)(b)(6) based on Eleventh Amendment immunity, qualified immunity, and Plaintiffs' failure to state a legally cognizable claim against the named MDOC Defendants.

## I.     INTRODUCTION

On December 28, 2023, Denise Short began a ten-year prison sentence, housed at the Central Mississippi Correctional Facility ("CMCF") in Rankin County, Mississippi. [Dkt. 17] at ¶¶20-21. Almost three months into her sentence, on March

1

Case 3:24-cv-00293-HTW-LGI     Document 47     Filed 01/14/25     Page 2 of 19

20, 2024, Short hanged herself while temporarily housed in a one-person, segregation cell. *Id.* at ¶¶29, 33. Plaintiffs, Kierra Calhoun, as the administratrix of Denise Short's estate, and Kierra Calhoun, as representative of Short's wrongful death beneficiaries, filed their initial Complaint on May 21, 2024. *Id.* at ¶¶1, 2. At first, Plaintiffs named the Mississippi Department of Corrections, Commissioner Burl Cain, and John Hunt as defendants. Then on September 30, 2024, Plaintiffs filed an Amended Complaint, adding MDOC Defendants Benjamin Jennings, Tereda Hairston, and Angela Smith along with VitalCore and several VitalCore employees. *See* [Dkt. 17]. Plaintiffs, in their operative Amended Complaint, sued the MDOC Defendants under 42 U.S.C. § 1983, alleging an Eighth Amendment violation for failing to prevent Short's suicide. Plaintiffs have sued the MDOC Defendants in their individual and official capacities.

Plaintiffs' claims against the MDOC Defendants (in their official capacities) should be dismissed as each Defendant is entitled to Eleventh Amendment immunity. Plaintiffs' claims against the MDOC Defendants (in their individual capacities) should be dismissed as each Defendant is entitled to qualified immunity. The allegations in Plaintiffs' First Amended Complaint are "shotgun pleadings" and fail to lodge any specific allegations against the named MDOC Defendants, respectively. Similarly, Plaintiffs' supervisory claims against the "Mississippi Department of Corrections, including but not limited to Burl Cain, John Hunt, and Tereda Hairston" should be dismissed for their failure to affirmatively allege that each participated "in

2

the acts that cause[d] the constitutional deprivation." As to all Defendants, this lawsuit should be dismissed in its entirety, with prejudice.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their First Amended Complaint on September 30, 2024. *See generally* [Dkt. 17]. The MDOC Defendants were served filed their Answers on December 3, 2024 (Hairston) and December 20, 2024 (Jennings and Smith).[1] In their Answers, all MDOC Defendants affirmatively raised the defenses of Eleventh Amendment immunity and qualified immunity. And now, having answered, Defendants timely assert this Motion to Dismiss Plaintiffs' claims.

In their First Amended Complaint, Plaintiffs allege that the MDOC Defendants, in both their official and individual capacities, are liable for Short's suicide. Specifically, Plaintiffs claim that Short was suffering mentally and that she had become suicidal. [Dkt. 17] at ¶23. Plaintiffs allege that the MDOC Defendants, though not mental health providers, refused Short's requests for "meaningful and competent mental health services." *Id.* at ¶44. Plaintiffs assert that MDOC placed Short in a segregated unit that contained dangerous bedsheets and that Short, while segregated, was not adequately supervised. *Id.* at ¶36, 45. Plaintiffs *generally and loosely* claim that the MDOC Defendants – all of them – knew or should have known that Short was suicidal and, despite their knowledge, placed her segregated, solitary cell.

---

[1] The Mississippi Department of Corrections, Commissioner Burl Cain, and John Hunt filed their Answer on October 14, 2024. *See* [Dkt. 18].

3

As to specific allegations, Plaintiffs claim that an *unknown MDOC employee* made "statements indicating Ms. Short should follow through on her suicidal ideations." *Id.* at ¶6. Plaintiffs allege that a second *unknown MDOC employee* failed to conduct the required checks on Short while she was in the segregated unit. *Id.* at ¶7. Finally, Plaintiffs claim that an *unknown MDOC employee* "failed to take any action to assist Ms. Short after observing her handing in her cell and appears to have simply walked away." *Id.* at ¶8.

While Plaintiffs make specific allegations against *unknown MDOC employees*, they do not make any express allegations against the named MDOC Defendants. As such, Plaintiffs' First Amended Complaint fails to set out constitutional violations against the named MDOC Defendants. The individual capacity claims against the named MDOC Defendants should be dismissed as Plaintiffs have failed to allege facts that would controvert their qualified immunity.

### III.  LEGAL STANDARDS

#### A.  Fed. R. Civ. P. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) (quoted favorably in *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Dismissal for lack of subject matter jurisdiction may be based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus

the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989). When a defendant files a Rule 12(b)(1) motion without any accompanying evidence, the Court will accept all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *See Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

In a case such as this, where the Defendants are entitled to Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over Plaintiffs' claims. *See Mahogany v. Louisiana State Supreme Ct.*, 262 F. App'x 636, 636 (5th Cir. 2008) (per curiam) ("A federal district court lacks subject matter jurisdiction where the named defendants are protected by Eleventh Amendment immunity.").

### B.  Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a claim should be dismissed when a plaintiff has not alleged enough facts to state a claim for relief that is plausible on its face. *See Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under Rule 12(b)(6), a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *See Shakeri*, 816 F.3d at 290.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual contentions, the "allegations

must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quotation omitted).

## IV. ARGUMENT

### A. The MDOC Defendants are Entitled to Eleventh Amendment Immunity.

The principle of sovereign immunity is reflected in the Eleventh Amendment, which precludes suits brought by private citizens against states in federal courts unless the State has waived its immunity. U.S. Const. amend. XI; *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).

Congress did not abrogate Eleventh Amendment immunity in enacting § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Nor has Mississippi waived its right to sovereign immunity. Miss. Code Ann. § 11-46-5(4) (West) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.").

Sovereign immunity extends to any state agency or department deemed to be an "arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326–27 (5th Cir. 2002). "This immunity also extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143 (5th Cir. 2001); *see Hafer v. Melo*, 502 U.S. 21,

25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984)).

The Mississippi Department of Corrections is an arm of the State of Mississippi and is thus cloaked with the State's Eleventh Amendment immunity from suit. *See Williams v. Mississippi Dep't of Corr.*, No. 3:12CV259-CWR-FKB, 2012 WL 2052101, at *1–2 (S.D. Miss. June 6, 2012) ("MDOC is considered an arm of the State of Mississippi" and is immune under the Eleventh Amendment); *Dandridge v. Mississippi*, No. CIV.A 208CV229KSMTP, 2009 WL 4940105, at *7 (S.D. Miss. Dec. 14, 2009) (same). Since MDOC is an arm of the state, its officers and employees are officers and employees of the state and are also entitled to sovereign immunity from monetary damages in their official capacities. *See Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity... is no different from a suit against the State itself.")). Thus, moving Defendants, in their official capacities, have immunity against Plaintiffs' claims for monetary damages against them in their official capacities under Section 1983.

To the extent Plaintiffs seek to hold MDOC liable for actions, policies and practices in violation of 42 U.S.C. § 1983 and other constitutional rights there can be no such liability here. It can be possible to establish municipal liability under § 1983 which "is limited to deprivations of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature.'" *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 316–17 (5th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs. of City of*

7

*New York*, 436 U.S. 658 (1978)). The *Monell* doctrine, however, only applies to municipalities and local governments – it does not apply to the state, or arms of the state. In *Will*, the Court explained its conclusion and why its findings related to Eleventh Amendment immunity did not contradict *Monell*:

> Finally, *Monell* itself is not to the contrary. True, prior to *Monell* the Court had reasoned that if municipalities were not persons then surely States also were not. And *Monell* overruled *Monroe* undercutting that logic. But it does not follow that if municipalities are persons then so are States. States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in *Monell* "to local government units which are not considered part of the State for Eleventh Amendment purposes[.]" Conversely, our holding here does not cast any doubt on *Monell*, and applies only to States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes.

*Will*, 491 U.S. at 70 (internal citations removed).

While Plaintiffs complain about MDOC and alleged state policies and practices, the claims against MDOC must be dismissed because there can be no *Monell* liability for state entities. The same is true to the extent that Plaintiffs assert official capacity "policy and practice" claims against "[t]he Mississippi Department of Corrections, including but not limited to Burl Cain, John Hunt, and Tereda Hairston as official policy makers . . . ." *See* [Dkt. 17] at ¶¶47-52.

### B. The MDOC Defendants, in Their Official Capacities, Are Not Persons Under 42 U.S.C. § 1983.

Besides being barred by Eleventh Amendment immunity, Plaintiffs' federal claims are improper as the MDOC Defendants are not parties that can be sued under

42 U.S.C. § 1983. The United States Supreme Court has summarily held that the state, arms of the state, and state officials sued in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983. *Will*, 491 U.S. at 71. This holding likewise applies to "any governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Id.* at 70. Thus, as a matter of statutory interpretation, the MDOC Defendants, in their official capacities, are not amenable to suit under § 1983 in federal court.

### C. The MDOC Defendants Are Entitled to Qualified Immunity.

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. 511.

"[O]nce properly raised by the defendant, the plaintiff has the burden to negate the assertion of qualified immunity." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016). And "[w]hen, as here, a qualified immunity defense is asserted in a motion to dismiss, the district court must—as always—do no more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)

(cleaned up). "A plaintiff is required by his pleadings to state facts which, if proved, would defeat a claim of immunity." *Id.*

"When a defendant asserts and is entitled to [qualified immunity], a court has two options: It can decide that the plaintiff's constitutional claims lack merit, or it can decide that the defendant's conduct did not violate clearly established law." *Smith v. Heap*, 31 F.4th 905, 911 (5th Cir. 2022). Which path to choose is committed to the Court's "sound discretion." *Id.* citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Additionally, a plaintiff must show that a defendant's specific actions were objectively unreasonable considering clearly established law. *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305–06 (5th Cir. 2020). *See also Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998). From this it follows that even if the defendant's conduct "violate[d] a clearly established federal right," the defendant "is nonetheless entitled to qualified immunity if [his] conduct was objectively reasonable." *Modica v. Taylor*, 465 F.3d 174, 179 (5th Cir. 2006). *See also Elizondo v. Parks*, 254 F. App'x 329, 332 (5th Cir. 2007).

> 1. **Plaintiffs' First Amended Complaint Is a Shotgun Pleading and Fails to Allege How Any Named MDOC Defendant Violated the Eighth Amendment.**

Plaintiffs fail to "plead specific facts" about any particular action by any named MDOC Defendant caused Short's suicide.[2] *See McLin v. Ard*, 866 F.3d 682, 688 (5th

---

[2] The single exceptions, possibly, are the supervisory claims made against "[t]he Mississippi Department of Corrections, including but not limited to Burl Cain, John Hunt, and Tereda Hairston as official policy makers . . . ." *See* [Dkt. 17] at ¶¶49-52. These allegations are addressed in sub-section 2 below.

10

Cir. 2017). Leaving the Defendants and the Court to guess at exactly what action each Defendant did, or did not do, is insufficient. Plaintiffs must "plead their case with precision and factual specificity" against each Defendant. *See Whitfield v. Mississippi Bureau of Narcotics*, No. 3:17CV987-HSO-JCG, 2019 WL 613493, at *5 (S.D. Miss. Feb. 13, 2019) (quoting *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003)). Here, Plaintiffs have failed in this minimal undertaking, advancing instead "shotgun" pleadings that run afoul of Fed. R. Civ. P. 8, and fail stand against the MDOC Defendants' rights to qualified immunity. *See Sahlein v. Red Oak Cap., Inc.*, No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477, at *4 (N.D. Miss. July 3, 2014); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002); *Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979) (The purpose of Rule 8 is "to [e]liminate prolixity in pleading and to achieve brevity, simplicity, and clarity."); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [Rule 8].").

"[Q]uintessential" shotgun pleadings fail to distinguish between the actions of named defendants. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). "What makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Martinez v. Nueces Cnty., Tex.*, No. 2:13-CV-178, 2013 WL 6190519, at *4 (S.D. Tex. Nov. 26, 2013) (citation omitted). This type of pleading requires a "trial

11

court [to] sift out the irrelevancies, a task that can be quite onerous." *Strategic Income Fund, L.L.C.*, 305 F.3d at 1295.

Shotgun pleadings are most problematic where qualified immunity has been asserted as the Court must examine each individual Defendant's entitlement to qualified immunity *separately. See Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999) (in a 1983 action, the conduct of each sued defendant in his individual capacity should be examined separately); *see also Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (To successfully allege constitutional violations in a § 1983 claim, the Fifth Circuit has held that a plaintiff "must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims.") (internal citations omitted)

Plaintiffs' blanket allegations in the First Amended Complaint are simply assigned to the MDOC Defendants without any additional factual explanation linking a named MDOC Defendant to a particular allegation. The allegations of unconstitutional acts are directed at MDOC, but not the specifically named MDOC Defendants. For example, Plaintiffs claim that:

> Regardless of the fact that she was suicidal, and that the *Mississippi Department of Corrections* and VitalCore knew or should have known of her acute mental distress, Ms. Short was left alone without supervision and without being monitored at all, much less adequately, by Mississippi Department of Corrections and Vitalcore employees and officials in her cell.

[Dkt. 17] at ¶31.

> Upon information and belief, the last time that a *Mississippi Department of Corrections* or VitalCore employee checked on Ms. Short was between 4:00 p.m. and 5:00 p.m. on March 19, 2024.

*Id.* at ¶32.

> Denise Short was deprived of her clearly established constitutional rights when her requests for meaningful and competent mental health treatment and medical care were actually or *constructively denied by Mississippi Department of Corrections and/or VitalCore and their employees.*

*Id.* at ¶40.

> Upon information and belief, Denise Short had been placed in the "suicide room" on prior occasions and *she had made known her suicidal ideations to MDOC and VitalCore through their employees.*

*Id.* at ¶41.

> The actions/inactions of the named Defendants, along with the potential unknown employees of the *Mississippi Department of Corrections* and VitalCore sued herein as John/Jane Does 12-30, constitute deliberate indifference as to the constitutional rights of Denise Short.

*Id.* at ¶47.

In contrast to Plaintiffs' allegations against the named Defendants, Plaintiffs also advance direct and explicit allegations against unnamed and unidentified MDOC Defendants. Examples of this include:

> The Defendant John Doe 1, is a Mississippi Department of Corrections employee who caused or contributed to the death of Denise Short by suggesting that she commit suicide or, at the least, for making statements indicating Ms. Short should follow through on her suicidal ideations.

*Id.* at ¶6.

> Upon information and belief, John/Jane Doe 3, an employee of the Mississippi Department of Corrections who

13

> identity is currently unknown, viewed Ms. Short at approximately 6:00 a.m. through a small slit in the cell door and stated she was "standing." John/Jane Doe 2, rather than ensuring the safety of Ms. Short, simply viewed her as "standing" and left her cell. As it turns out, what John/Jane Doe 2 viewed was not Ms. Short "standing," but, rather, hanging by her neck from a bedsheet provided to her by the Mississippi Department of Corrections.

*Id.* at ¶34.

> Denise Short advised John/Jane Doe 1, an employee at the facility, in the time shortly before her death, that she was going to commit suicide.

*Id.* at ¶44.

> John/Jane Doe 2, and potentially other unknown employees of the Mississippi Department of Corrections, failed to perform necessary checks on Denise Short while she was kept in a solitary cell in the days/hours preceding her suicide.

*Id.* at ¶45.

As noted in the few examples above, Plaintiffs' First Amended Complaint fails to tie the actions of any named MDOC Defendant to Denise Short's suicide.[3] District

---

[3] Notably, MDOC Defendant Angela Smith is *never mentioned* in the First Amended Complaint after ¶11 where she is identified as an MDOC employee. Similarly, the specific act alleged against Benjamin Jennings and Tereda Hairston is that each (or both) pepper sprayed Denise Short during a mental health crisis. [Dkt. 17] at 29. This allegation is vague as it does not appear to relate to Short's suicide, representing the "inclusion of irrelevant and unrelated facts not tied to specific causes of action." *See Martinez*, 2013 WL 6190519, at *4 (citation omitted). Furthermore, it is not even clear who Plaintiffs allege pepper sprayed Short. Plaintiffs state that:

> Defendant Jennings, together with Defendant Hairston, together with other Mississippi Department of Corrections and VitalCore employees were well aware of Ms. Short's conditions. Defendant Jennings, together with Defendant Hairston and other MDOC employees, failed and/or refused to adequately assist Ms. Short and, perhaps, even worsened her distress in a myriad of ways, including but not limited to pepper spraying Ms. Short during a mental health crisis.

14

Courts have been particularly instructive on this point in the past. "In complex cases involving multiple defendants and multiple counts, it is imperative that litigants ensure compliance with basic pleading requirements. This is especially true when due to the sophisticated nature of the parties and uncertainty regarding the facts, many of the defendants are John Does or best-guess named defendants." *Griffin v. HSBC Mortg. Servs., Inc.*, No. 4:14-CV-00132-DMB, 2015 WL 4041657, at *6 (N.D. Miss. July 1, 2015). The Court cautioned, "[i]n light of *Twombly* and *Iqbal*, a party faced with this scenario unnecessarily gambles when it names defendants before obtaining sufficient facts to allege a facially plausible claim." *Id.* "Here, [like in *Griffin*] it is apparent that [Plaintiff] likely included every fact at [her] disposal, but these facts are not consistently precise regarding the conduct of the named defendants." *Id.*

Plaintiffs' First Amended Complaint is fundamentally flawed – an exemplary shotgun pleading. There, Plaintiffs fail to allege the specific actions by the individually named MDOC Defendants. Plaintiffs have failed to allege specific facts that would show that any named MDOC Defendant violated clearly established law or acted unreasonably.[4] Plaintiffs' suit against the MDOC Defendants individually should be dismissed as the MDOC Defendants are entitled to qualified immunity.

---

[Dkt. 17] at 29. This is a shotgun pleading - it attributes one event to Jennings, Hairston "and other MDOC employees" and has nothing to do with Short's suicide, as alleged.

[4] This objective standard is often applied in jail suicide cases, upholding a defendant's qualified immunity. *See* e.g., *Hare*, 135 F.3d at 329 (Fifth Circuit upholding qualified immunity for officers even though they had been told by the detainee that she was contemplating suicide, and despite their failure to regularly check her status or remove the blanket from her cell.). *See also Rhyne v. Henderson Cnty.*, 973 F.2d 386, 393 (5th Cir. 1992)

15

2. The Court Should Dismiss Plaintiffs' Administrative Claims Against the Mississippi Department of Corrections, Burl Cain, John Hunt, and Tereda Hairston.

"In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir.2008). A supervisory official such as Cain may only be held liable if he is either personally involved in the constitutional deprivation, or if a sufficient causal connection exists between her wrongful conduct and the constitutional violation. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (quotation omitted); *see also Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).When raised in the context of qualified immunity, the Court should consider whether the actions of *each* defendant separately[5] – here, the Mississippi Department of Corrections, Burl Cain, John Hunt,

---

(giving a blanket to an inmate who had twice attempted suicide and was diagnosed as suicidal, and not placing the inmate under continuous observation, is not a constitutional violation)

[5] Again "[p]ersonal involvement is an essential element of demonstrating liability under § 1983." *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023) (citations omitted). A plaintiff *must* "specify the personal involvement of *each defendant* ... [and] cannot make generalized allegations, nor can [she] support a claim based on any vicarious liability theory". *Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992) (emphasis added).

and Tereda Hairston – acted in an objectively unreasonable manner with respect to clearly established law.

Plaintiffs allege that the "Mississippi Department of Corrections, including but not limited to Burl Cain, John Hunt, and Tereda Hairston" were all official policy makers and knew there were dangers in MDOC. *See generally* [Dkt. 17] at ¶¶47-52. But the Plaintiffs do not allege or identify any unconstitutional policies implemented by Cain (or any other Defendant for that matter) that caused any constitutional injury. As with a *Monell* claim, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Here, without specific reference to the policy, the Court cannot determine the policy's relative constitutionality – it cannot know what policy is being attacked. Instead, the Court is left with the Plaintiffs' circular logic where, as here, Plaintiffs reason that there must have been a defective policy (or no policy at all) regarding inmate suicides because an inmate – Denise Short – committed suicide.  Ultimately, the Plaintiffs assert no facts that show that "Mississippi Department of Corrections, including but not limited to Burl Cain, John Hunt, and Tereda Hairston" affirmatively participated "in the acts that cause[d] the constitutional deprivation." *Carter v. Cain*, No. CV 17-201-SDD-RLB, 2020 WL 1281240, at *3 (M.D. La. Mar. 17, 2020) (citing *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

These procedural shortcomings are underscored by the even more circuitous claims made in ¶51 of their First Amended Complaint. Citing understaffing,

Plaintiffs claim that the deprivation of MDOC inmates' (general) constitutional rights are prevalent, concluding that Burl Cain, John Hunt, and Tereda Hairston have allowed such deprivations to become "custom, policy, and practice in Mississippi prisons due to their inactions in the fact of known, serious issues." [Dkt. 17] at ¶51. There is no basis for this conclusion[6], and it is fatal to Plaintiffs' supervisory claims. Plaintiffs acknowledge as much, stating that the four supervisory defendants continually placed "inmates in unnecessary and dangerous confinement conditions and by otherwise failing to ensure the *safety of inmates* as stated herein and *in other ways which may be learned and/or confirmed as discovery progresses*."

## V. CONCLUSION

For the reasons outlined above, as well as in their motion to dismiss, all of Plaintiffs' claims against the Mississippi Department of Corrections, Commissioner Cain, John Hunt, Tereda Hairston, Benjamin Jennings, and Angela Smith are due to be dismissed.

---

[6] In their initial Complaint, Plaintiffs attached and referenced the Department of Justice Report of its four-year investigation of the MDOC and made several findings, including that MDOC fails to adequately supervise people in housing units and that it fails to properly investigate incidents of serious harm. *See* U.S. Dep't of Justice, Investigation of Central Mississippi Correctional Facility, South Mississippi Correctional Institution, and Wilkinson County Correctional Facility (Feb. 28, 2024); *See generally* [Dkt. 1-1]. Notably, that investigation was opened in February 2020 and continued through April 2022. *Id.* The DOJ Report indicates that the State and MDOC cooperated with the investigation and in November 2023, MDOC provided an update on their efforts to improve these conditions. *Id.* Because Short did not enter MDOC until December 28, 2023, the DOJ Report and the conditions described therein are irrelevant. *See Mack v. Lewis*, No. 3:14CV415-LRA, 2016 WL 5478034, at *3 (S.D. Miss. Sept. 29, 2016) (noting that the investigations references in a DOJ letter/report were from a different time when Plaintiff was housed at the correctional facility).

DATE: JANUARY 13, 2025

      MISSISSIPPI DEPARTMENT OF CORRECTIONS, BURL CAIN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES AS COMMISSIONER OF THE DEPARTMENT OF CORRECTIONS, JOHN HUNT, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, and TEREDA HAIRSTON, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, BENJAMIN JENNINGS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, AND ANGELA SMITH, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES *Defendants*

LYNN FITCH
Attorney General of Mississippi

*/s/ James H. Hall*
Special Assistant Attorney General
Mississippi Bar No. 100303
P.O. Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3815
E-mail: james.hall@ago.ms.gov

### CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the ECF system which provided notice to all counsel of record.

This the 13th day of January 2025.

      */s/ James H. Hall*