# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**THE ESTATE OF DENISE SHORT, et al.**                    **PLAINTIFFS**

**vs.**                    **CAUSE No. 3:24-CV-293-HTW-LGI**

**MISSISSIPPI DEPARTMENT OF**
**CORRECTIONS, et al.**                    **DEFENDANT**

---

### ORDER

---

Before this Court are two dispositive motions, filed by both sets of Defendants herein: the set of Defendants employed by the Mississippi Department of Corrections ("MDOC") [Docket No. 46], and the set of Defendants employed by VitalCore Health Strategies, LLC ("VitalCore") [Docket No. 28]. Each Motion to Dismiss, filed under Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6)[2], challenges Plaintiffs' attempt here to hold them liable and subject to damages under the Eighth[3] and Fourteenth[4] Amendments to the United States Constitution for the suicidal death

---

[1] Fed. R. Civ. P. 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing
    (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
        (1) lack of subject-matter jurisdiction;

[2] Fed. R. Civ. P. 12. Defenses and Objections:
    (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
        (6) failure to state a claim upon which relief can be granted;

[3] Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted
U.S. Const. amend. VIII

[4] Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV

of Denise Short, who took her own life while incarcerated at the Central Mississippi Correctional Facility, located in Rankin County, Mississippi. Having considered the motions, the responses, the replies, and applicable law, this Court issues the following ruling.

## I.    JURISDICTION

This Court possesses subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331[5], since Plaintiffs, the estate of Denise Short, et al, raise federal constitutional and statutory claims under 42 U.S.C. §1983[6], as the umbrella statute for the asserted Eighth and Fourteenth Amendment violations.

## II.    BACKGROUND FACTS

Denise Short ("Ms. Short) began on December 28, 2023, a ten-year prison sentence at the Central Mississippi Correctional Facility ("CMCF") located in Rankin County, Mississippi. [Dkt. 17 at 20-21]. Less than three months into her incarceration, on March 20, 2024, Ms. Short died by suicide, hanging herself while temporarily housed in a one-person segregation cell. [Dkt. 17 at 33].

Kierra Calhoun, as administratrix of Denise Short's estate and on behalf of Short's wrongful death beneficiaries[7], filed on May 21, 2024, a Complaint against the Defendants seeking recompense for alleged violations of the constitutional rights of Ms. Short. [Dkt. 17 at 1, 2]. Plaintiffs originally named MDOC, Commissioner Burl Cain, and MDOC employee John Hunt as

---

[5] Title 28 U.S.C. § 1331: Federal question. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[6] Section 1983 states in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress... 42 U.S.C.A. § 1983 (West)

[7] In Mississippi, wrongful death beneficiaries are defined exclusively by Mississippi Code Annotated § 11-7-13. The law sets out a strict hierarchy of who can file a wrongful death lawsuit and receive compensation. Plaintiffs herein have not named the wrongful death beneficiaries of Ms. Short.

defendants. On September 30, 2024, Plaintiffs filed an Amended Complaint, adding MDOC Defendants Benjamin Jennings, Tereda Hairston, and Angela Smith, along with VitalCore Health Strategies, LLC, and several VitalCore employees: Jasmine Nelson, Kaliah Robinson, Rosalynn Allen, and Whitney A. Dixon. [Dkt. 17].

Suing under 42 U.S.C. § 1983, Plaintiffs assert that Defendants face liability and owe damages for failing to prevent Ms. Short's suicide. Plaintiffs sue both sets of defendants in their individual and official capacities.

Plaintiffs allege that Ms. Short suffered from mental health issues and was suicidal. [Dkt. 17 at 23]. They claim that MDOC Defendants, although not mental health providers, and VitalCore Defendants refused Ms. Short's requests for "meaningful and competent mental health services." [Dkt. 17 at 44]. Plaintiffs assert that MDOC placed Ms. Short in a segregated unit containing dangerous bedsheets and did not adequately supervise her while she was segregated. [Dkt. 17 at 45]. Plaintiffs generally claim that all MDOC and VitalCore Defendants knew or should have known Ms. Short was suicidal, yet placed her in a segregated, solitary cell despite this knowledge.

Plaintiffs make specific allegations against unknown MDOC employees. For example, Plaintiffs claim an unknown MDOC employee made statements indicating Ms. Short should follow through on her suicidal ideations. [Dkt. 17 at 28, 38]. Plaintiffs allege a second unknown MDOC employee failed to conduct required checks on Ms. Short in the segregated unit. [Dkt. 17 at 17]. Plaintiffs claim an unknown MDOC employee failed to take any action to assist Ms. Short after observing her hanging in her cell while the unknown employee appears to have simply walked away. [Dkt. 17 at 34].

Plaintiffs, turning to specific individual MDOC Defendants, state that Burl Cain, John Hunt, and Tereda Hairston were official policymakers who knew about Ms. Short's mental health

conditions. [Dkt. 17 at 24]. Plaintiffs also allege Defendants Jennings and Hairston pepper-sprayed Ms. Short while she was suffering a mental health crisis. [Dkt. 17 at 24][8].

MDOC Defendants filed their Answers on October 14, 2024 (MDOC, Cain, Hunt); on December 3, 2024 (Hairston); and on December 20, 2024 (Jennings and Smith). In their Answers, all MDOC Defendants raised the defenses of Eleventh Amendment[9] immunity and qualified immunity.

VitalCore was and is a private company contracted by the State of Mississippi to provide healthcare at CMCF. VitalCore Defendants Jasmine Nelson, Kaliah Robinson, Rosalynn Allen, and Whitney A. Dixon were employees and agents of VitalCore Health Strategies, LLC, at all relevant times.

## III.    LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

A case may be properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the controversy. *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) may rest on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). When a defendant files a Rule 12(b)(1) motion without

---

[8] Plaintiffs provide no further information regarding this allegation. This Court, therefore, is unaware of the temporal proximity of this alleged pepper-spraying to Ms. Short's death.

[9] U.S. Constitution, Amendment XI
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

accompanying evidence, the Court accepts all well-pleaded allegations in the complaint as true and construes those allegations in a light most favorable to the plaintiff. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). A federal district court lacks subject matter jurisdiction when named defendants are protected by Eleventh Amendment immunity. *Mahogany v. Louisiana State Supreme Ct.*, 262 F. App'x 636, 636 (5th Cir. 2008).

### B. Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a court should dismiss the claim when a plaintiff has not alleged enough facts to state a claim for relief that is plausible on its face. *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 290 (5th Cir. 2016); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under Rule 12(b)(6), a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Shakeri*, 816 F.3d at 290.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not require detailed factual contentions, the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 550 U.S. at 555. Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).

### IV.    ARGUMENTS OF THE PARTIES

### A. MDOC Defendants' Motion to Dismiss [Docket No. 47]

The MDOC Defendants argue for dismissal of all claims against them based on protections afforded by Eleventh Amendment immunity, qualified immunity, and Plaintiffs' failure to state a legally cognizable claim, condemned by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Eleventh Amendment to the United States Constitution[10] now enters the discussion. That constitutional rubric pronounces those entitled to a protection from suit. Congress did not abrogate Eleventh Amendment immunity in enacting § 1983, the statute at issue here, and Mississippi has not waived its sovereign immunity. Miss. Code Ann. § 11-46-5[11]. MDOC is an arm of the State of Mississippi, thereby cloaked with immunity from suit. This immunity extends to state officials sued in their official capacities, as such a suit is actually against the state itself. Consequently, MDOC and its officers and employees in their official capacities are immune from monetary damages under § 1983.

MDOC Defendants further argue that the *Monell* doctrine, which allows for municipal liability under § 1983, applies only to municipalities and local governments, not to a state or its arms. Therefore, add the Defendants, claims against MDOC and official capacity "policy and practice" claims against Burl Cain, John Hunt, and Tereda Hairston must be dismissed.

Moreover, for additional measure, MDOC Defendants, namely, Hairston, Jennings, Smith, Cain, and Hunt,  assert that they are not "persons" under 42 U.S.C. § 1983 when sued in their official capacities, as summarily held by the Supreme Court. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)

Secondly, MDOC Defendants claim qualified immunity for the individual capacity claims. They state that qualified immunity shields government officials performing discretionary functions

---

[10] See fn. 9.

[11] Miss. Code Ann. § 11-46-5 states, in pertinent part:
> (1) Notwithstanding the immunity granted in Section 11-46-3, or the provisions of any other law to the contrary, the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived from and after July 1, 1993, as to the state, and from and after October 1, 1993, as to political subdivisions; provided, however, immunity of a governmental entity in any such case shall be waived only to the extent of the maximum amount of liability provided for in Section 11-46-1.

from civil damages liability if their actions could not reasonably have been deemed a constitutional violation. Once qualified immunity is properly raised, Plaintiffs bear the burden to negate its assertion by pleading specific facts that, if proved, would defeat the claim of immunity. Plaintiffs must show that a defendant's specific actions were objectively unreasonable considering clearly established law.

MDOC Defendants then argue that Plaintiffs' First Amended Complaint constitutes "shotgun pleadings" because it fails to allege with specificity how any named MDOC Defendant violated the Eighth Amendment. The Complaint, they charge, lumps all defendants together without distinguishing their conduct, making it impossible for a trier of fact to determine what actions each named defendant took, or did not take. MDOC Defendants highlight that Plaintiffs made some specific allegations, but only against "unknown" MDOC employees, not against any of the named MDOC Defendants regarding Ms. Short's suicide.

Thirdly, MDOC Defendants seek dismissal of Plaintiffs' "administrative" or supervisory claims against MDOC employees, Burl Cain, John Hunt, and Tereda Hairston. They argue that supervisory liability requires the supervisor to be personally involved in the constitutional deprivation or have a sufficient causal connection between their wrongful conduct and the violation. Although supervisory officials may be liable if they implemented a policy so deficient that it repudiates constitutional rights and is the moving force of the violation, Plaintiffs specifically must identify each policy that allegedly caused constitutional violations.

MDOC Defendants contend that Plaintiffs offer no unconstitutional policies implemented by Cain or other defendants, nor offer any policies that caused constitutional injury.

Plaintiffs have submitted a Department of Justice Report, dated February 28, 2024. This Report, say Plaintiffs, identifies several constitutional miscues by MDOC. Defendants respond

that the Report is irrelevant, as the investigation concluded before Ms. Short's incarceration and does not mention any named individuals. (Docket no. 1-1, Defense Report).

### B. Plaintiffs' Response in Opposition to MDOC Defendants' Motion [Docket No. 50]

Plaintiffs challenge the matter of qualified immunity. The two-pronged interrogatories for the application of qualified immunity, they say, is not met here: (1) whether a constitutional right was violated on the facts allege; and (2) whether the right was clearly established.

Plaintiffs assert that as an incarcerated individual, Ms. Short was protected by the Eighth Amendment's prohibition against cruel and unusual punishment, which includes the duty for prison officials to provide adequate medical care. Plaintiffs flesh out this accusation by stating that Defendants manifested deliberate indifference: they knew of Ms. Short's suicidal ideations; ignored her requests for mental health treatment (including placement in a "suicide room"); and failed to perform adequate mental health checks on her while she was in segregation.

Plaintiffs dispute that their First Amended Complaint is a "shotgun pleading." Their complaint, they say, contains specific factual allegations detailing Ms. Short's mental health conditions and the actions/inactions of the MDOC and VitalCore Defendants. Plaintiffs argue that the complaint clearly delineates between entity defendants and named individual defendants, they say, when their identities were known. They highlight allegations such as an unknown MDOC employee ignoring Ms. Short's suicidal ideation; John/Jane Doe 2 failing to perform checks; John/Jane Doe 3 failing adequately to check Ms. Short's cell; and Defendants Jennings and Hairston pepper-spraying Ms. Short during a mental health crisis.

Plaintiffs argue that MDOC, Cain, Hunt, and Hairston are liable for supervisory claims because they were aware of the "deadly risks of 1) overuse of solitary confinement; 2) failure to

provide preventative care after Ms. Short voiced suicide ideations; and 3) failure to ensure the required checks were completed relative to the inmates." Plaintiffs state that these defendants' inaction, in the face of known risks, directly contributed to Ms. Short's death and constituted a widespread policy. Plaintiffs further assert the United States Department of Justice report clearly outlined these deficiencies, putting MDOC Defendants on notice.

### C. MDOC Defendants' Reply to Plaintiffs' Response [Docket No. 53]

MDOC Defendants reiterate their entitlement to Eleventh Amendment immunity, underscoring that Plaintiffs did not address their argument in their response. This deliberate omission, Defendants say, means all official capacity claims should be dismissed with prejudice.

MDOC Defendants also reaffirm their qualified immunity defense, asserting Plaintiffs failed to meet their burden to show unreasonableness. They emphasize that Plaintiffs' Complaint unquestionably lacks any specific allegations of unreasonable acts by the ***named*** MDOC Defendants related to Ms. Short's suicide. Plaintiffs' allegations of specific actions by ***unknown*** MDOC employees cannot be imputed to the named defendants, nor can the named defendants be held liable under *respondeat superior*.

Plaintiffs' Complaint remains, they say, a shotgun pleading ; it fails to distinguish actions among named defendants and lacks specific allegations against individuals. MDOC Defendants stress that personal involvement and actual knowledge of a substantial suicide risk are crucial for individual liability in suicide cases, and Plaintiffs have not alleged this for the named MDOC officials.

### D. VitalCore Defendants' Motion to Dismiss [Docket No. 31]

VitalCore Defendants argue for dismissal based on Plaintiffs' alleged failure to state a claim upon which relief can be granted and that they are entitled to derivative qualified immunity.

First, VitalCore Defendants assert that Plaintiffs have not sufficiently alleged that VitalCore, directly or vicariously, violated Denise Short's constitutional rights, claiming Plaintiffs' allegations to be mere "speculation." Plaintiffs' Complaint, they add, at best, alleges only negligent conduct, which does not rise to the level of deliberate indifference required for an Eighth Amendment violation. *See Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The Eighth Amendment's prohibition against cruel and unusual punishment, they point out, imposes a duty on prison officials to ensure adequate medical care, but "unsuccessful medical treatment, acts of negligence, or medical malpractice" do not meet the "extremely high standard" of deliberate indifference. They emphasize that Plaintiffs do not allege how VitalCore specifically knew or should have known Ms. Short was suicidal. Which VitalCore defendants to whom Ms. Short allegedly communicated her suicidal ideations, or when, remain unstated. This pleading deficiency, say VitalCore , adds up to one conclusion: Plaintiffs' allegations fail to show not only a "wanton disregard" for Ms. Short's serious medical needs, but also any liability on the part of VitalCore.

Secondly, VitalCore Defendants argue they are entitled to derivative qualified immunity (though their arguments primarily address Eleventh Amendment sovereign immunity, as noted by Plaintiffs). VitalCore states that as an agent and contracted arm of the state, it is immune from suit and liability under § 1983, as states and their arms are not considered "persons" within the meaning of the statute. They contend that since Plaintiffs expressly allege causes of action against VitalCore in an official capacity as an agent of the State, and VitalCore has not waived immunity, it should be shielded from liability.

### E. Plaintiffs' Response in Opposition to VitalCore Defendants' Motion [Docket No. 39]

Plaintiffs argue that they have adequately pled a constitutional violation against the VitalCore Defendants. They assert that VitalCore, acting under MDOC's authority, "consciously and deliberately ignored Denise Short's known mental health conditions and her repeated cries for adequate treatment," which constitutes an Eighth Amendment violation. Plaintiffs state that failure to provide adequate protection against a prisoner's known suicidal impulses is actionable. They contend that VitalCore "knew of and disregarded an excessive risk to inmate health or safety" by having subjective knowledge of Ms. Short's substantial risk of harm and responding with deliberate indifference. Plaintiffs summarize the facts of Ms. Short's case and compare them to *Arenas v. Calhoun*, emphasizing that Ms. Short's known suicidal ideations and requests for mental health services were ignored. Plaintiffs refute VitalCore's argument that they only pled medical negligence, stating that their allegations rise above negligence and constitute deliberate indifference.

Plaintiffs also argue that VitalCore is not entitled to sovereign immunity. They acknowledge that Eleventh Amendment immunity extends to "arms of the state," but argue this classification does not apply to VitalCore, which is a private company. Plaintiffs highlight that VitalCore failed to present any evidence or analyze the six factors[12] courts use to determine if an entity is an arm of the state. Plaintiffs found no case law or statute classifying VitalCore as a

---

[12] These factors are: (1) whether the state statutes and case law view the agency as an arm of the state, (2) the source of the entity's funding, (3) the entity's degree of local autonomy, (4) whether the entity is concerned primarily with local, as opposed to statewide, problems, (5) whether the entity has the authority to sue and be sued in its own name, and (6) whether the entity has the right to hold and use property. *Matter of Entrust Energy, Inc.,* 101 F.4th 369 (5th Cir. 2024)

governmental entity or granting it Eleventh Amendment immunity, concluding VitalCore is not entitled to derivative immunity because it is simply a private corporation.

### F. VitalCore Defendants' Rebuttal to Plaintiffs' Response [Docket No. 41]

VitalCore Defendants reiterate that Plaintiffs failed to state a claim of deliberate indifference. They emphasize that Plaintiffs must allege facts making it plausible to believe VitalCore was a "knowing and active participant in the systemic shortcomings and institutional violations" of Ms. Short's constitutional rights, resulting in her death.

VitalCore contends that Plaintiffs fail to allege specific actions or inactions attributable to VitalCore's care that led to Ms. Short's suicide. VitalCore argues that Plaintiffs merely allege it "knew or should have known" Ms. Short was suicidal, without specifying *how* or *why*, or *to whom* Ms. Short communicated these ideations. They assert that mere negligence, or even an inmate expressing suicidal ideations to officials who do nothing, constitutes negligence, not deliberate indifference. VitalCore emphasizes that Ms. Short made the decision to end her own life, and Plaintiffs have pleaded no facts showing anyone on the VitalCore team could have or should have had any indication that Ms. Short was suicidal beyond conclusory allegations. VitalCore asks for dismissal because Plaintiffs have not sufficiently pled allegations of deliberate indifference.

### V.    DISCUSSION

#### A.  Eleventh Amendment Immunity

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This amendment protects states from suits in federal court unless the state has waived its immunity or Congress has abrogated it pursuant to a valid exercise of power. *Alden v.*

*Maine*, 527 U.S. 706, 731 (1999). Congress did not abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Furthermore, Mississippi has not waived its sovereign immunity from suit in federal courts. Miss. Code Ann. § 11-46-5.

Sovereign immunity extends not only to the state itself but also to state agencies or departments considered an "arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326-27 (5th Cir. 2002). This immunity also protects state officials when sued in their official capacities, because such a suit is effectively against the state itself. *New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143 (5th Cir. 2001); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

The Fifth Circuit consistently has ruled that the Mississippi Department of Corrections is an arm of the State of Mississippi and enjoys Eleventh Amendment immunity from suit. *See, e.g., Williams v. Mississippi Dep't of Corr.*, No. 3:12CV259-CWR-FKB, 2012 WL 2052101, at *1-2 (S.D. Miss. June 6, 2012). This immunity extends to MDOC officers and employees sued in their official capacities for monetary damages under Section 1983. *Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993).

Plaintiffs argue against the MDOC Defendants' motion, but they do not address the MDOC Defendants' argument regarding Eleventh Amendment immunity for claims against them in their official capacities. Their failure to respond to this specific argument constitutes an abandonment of those claims. Therefore, the Court finds that the Mississippi Department of Corrections and the individual MDOC Defendants (Burl Cain, John Hunt, Tereda Hairston, Benjamin Jennings, and Angela Smith) are entitled to Eleventh Amendment immunity for all claims asserted against them in their official capacities.

Regarding VitalCore, Plaintiffs correctly assert that VitalCore is a private company. The determination of whether an entity is an "arm of the state" involves analyzing several factors,

including state statutory characterization, funding source, degree of local autonomy, whether the entity addresses local versus statewide problems, and its ability to sue and be sued or hold property. *Williams v. Mississippi Department of Public Safety*, No. 1:17-CV-00179-GHD-DAS, 2018 WL 1128133, at *2-3 (N.D. Miss. Mar. 1, 2018). The source of funds is the most important factor. *Id.* VitalCore, in its motion, merely asserts it is a "contracted state actor" but provides no evidence or analysis of these factors. Plaintiffs correctly point out that simply contracting with the state does not inherently confer Eleventh Amendment immunity.

This Court cannot grant Eleventh Amendment immunity to VitalCore without a developed record and specific factual support showing it operates as an arm of the state. The VitalCore Defendants, at this juncture, have not met their burden to establish entitlement to Eleventh Amendment immunity.

### B. "Person" under 42 U.S.C. § 1983

The United States Supreme Court unequivocally has held that states, arms of the state, and state officials sued in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). This statutory interpretation applies to any governmental entities considered "arms of the State" for Eleventh Amendment purposes. *Id. at 70*. Because the Mississippi Department of Corrections and the individual MDOC Defendants, in their official capacities, are arms of the state, they are not amenable to suit under § 1983 in federal court. This provides an additional basis for dismissing the official capacity claims against the MDOC Defendants.

### C. Qualified Immunity

Qualified immunity protects government officials from liability for civil damages when performing discretionary functions unless their conduct violates clearly established statutory or

constitutional rights, and a reasonable person would have known of the violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant properly raises qualified immunity, the burden shifts to the plaintiff to negate the assertion. *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016). To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead specific facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged harm and defeat the qualified immunity defense with equal specificity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

The Court employs a two-step inquiry to assess a qualified immunity defense: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may exercise its discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Id. at 236*. Even if a defendant's conduct violates a clearly established right, he/she is entitled to qualified immunity if his/her conduct was objectively reasonable. *Modica v. Taylor*, 465 F.3d 174, 179 (5th Cir. 2006).(finding that the executive director of a state agency employer was entitled to qualified immunity for her decision to discharge state agency employee under the Family and Medical Leave Act (FMLA) because it was not clearly established at time of discharge that a supervisory employee was subject to individual liability under the FMLA).

### 1. Deliberate Indifference Standard (Eighth Amendment)

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishments, including inadequate medical care for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment violation based on inadequate medical care, a prisoner must show that officials acted with "deliberate indifference" to their serious medical

needs. *Id. at 834*. Deliberate indifference requires a showing that prison officials (1) knew of facts from which to infer a substantial risk of serious harm to the inmate, (2) drew the inference, and (3) disregarded that risk by failing to take reasonable measures to abate it. *Id. at 837*. This is an "extremely high standard" to meet; mere negligence, unsuccessful medical treatment, or medical malpractice do not suffice. *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

Fifth Circuit jurisprudence guides that suicide is an objectively serious harm implicating the state's duty to provide adequate medical care. Inmates therefore have a clearly established right to receive treatment for voiced suicidal ideations and proper supervision. *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019); *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996). The Fifth Circuit, however, has noted that "the failure to instruct employees to maintain a suicide watch, alone, to constitute deliberate indifference" is not enough to meet this standard. *Langford v. Union Cnty., Mississippi*, 51 F. App'x 930 (5th Cir. 2002).

## 2. Individual Capacity Claims against MDOC

Plaintiffs' First Amended Complaint asserts that MDOC Defendants (though not mental health providers) and VitalCore Defendants refused Ms. Short's requests for "meaningful and competent mental health services." Plaintiffs allege that MDOC placed Ms. Short in a segregated unit with dangerous bedsheets and did not adequately supervise her; however, Plaintiffs admit to making specific allegations only against *unknown* MDOC employees, rather than the *named* MDOC Defendants. For instance, Plaintiffs claim an "unknown MDOC employee" suggested Ms. Short follow through on suicidal ideations; another "unknown MDOC employee" failed to conduct required checks; and a third "unknown MDOC employee" observed Ms. Short hanging but "simply walked away."

This Court agrees with MDOC Defendants that Plaintiffs' pleading suffers from the flaws of a "shotgun pleading." Shotgun pleadings fail to distinguish between the actions of named defendants, leaving the Court and defendants to guess at the specific conduct alleged against each. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

Another type shotgun pleading identified by the Eleventh Circuit involves asserting multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Plaintiffs categorize all named MDOC Defendants broadly as "the Mississippi Department of Corrections," "Defendants," or "employees of the Mississippi Department of Corrections," failing to specify the individual conduct of each defendant related to Ms. Short's suicide. This lack of specificity impedes the defendants' ability to mount a precise defense, aligning with the core deficiency of shotgun pleadings.

Personal involvement is an essential element for establishing individual liability under § 1983. A plaintiff must plead that each government official defendant, through his/her own individual actions, violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In suicide cases, each defendant must have gained *actual knowledge* of the substantial risk of suicide and responded with deliberate indifference. *Hare*, 74 F.3d at 650. Plaintiffs have not alleged that the named MDOC officials possessed actual knowledge of Ms. Short's substantial risk of suicide. They instead point to the specific knowledge of unknown John/Jane Does. Knowledge of an unknown employee cannot be imputed to the named MDOC employees. The doctrine of *respondeat superior* does not apply in § 1983 actions. *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996). Absent a showing of personal knowledge and personal involvement, the named MDOC Defendants cannot be liable for damages arising from Ms. Short's suicide.

While Plaintiffs' complaint describes the overall tragic circumstances of Ms. Short's death, it falls short of pleading specific facts that demonstrate the *personal involvement* and *deliberate indifference* of each named MDOC Defendant in an individual capacity. The complaint therefore fails to state a plausible claim against the individual MDOC Defendants under Rule 12(b)(6).

### 3. Individual Capacity Claims against VitalCore

Plaintiffs allege that VitalCore Defendants, acting under MDOC's authority, "consciously and deliberately ignored Denise Short's known mental health conditions and her repeated cries for adequate treatment." They argue that VitalCore knew of and disregarded a substantial risk of serious harm to Ms. Short. VitalCore, however, argues that Plaintiffs' allegations amount to mere negligence, not deliberate indifference, and that these allegations fail to specify how or when VitalCore personnel gained knowledge of Ms. Short's suicidal ideations.

The Fifth Circuit sets a high bar for deliberate indifference. While Ms. Short's suicidal ideations constitute a serious medical need, Plaintiffs must adequately plead that VitalCore and its individual employees had *subjective knowledge* of this risk and *disregarded* it. Plaintiffs only allege that "VitalCore knew or should have known" of Ms. Short's acute mental distress and that her requests for treatment were "ignored and/or denied by MDOC officials and the VitalCore Defendants." [Dkt. 39 at 5]. Plaintiffs state that Ms. Short explicitly told an "unknown" MDOC employee she would commit suicide. The Complaint, however, critically fails to specify which *named VitalCore* employee received this information, or how any such employee then disregarded it, creating a crucial gap in the deliberate indifference claim.

While *Arenas v. Calhoun* is instructive regarding the established right to suicide prevention, the facts in *Arenas* involved a prison official *directly observing* an inmate attempting suicide and failing to intervene promptly. Here, the allegations against the *named* VitalCore

Defendants are less direct. Plaintiffs' allegations that VitalCore "ignored her complaints" or "denied her requests" are too conclusory to establish deliberate indifference without more specific factual enhancement tying those actions to the named VitalCore personnel. The complaint does not detail what specific actions or inactions each named VitalCore Defendant took that demonstrate a subjective awareness of Ms. Short's specific, serious suicide risk and a conscious disregard of that risk. This amounts to a failure to meet the pleading standard for deliberate indifference against the individual VitalCore Defendants.

### 4. Supervisory Liability

Supervisory officials cannot be held liable under § 1983 on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676. A plaintiff must demonstrate that the supervisor was personally involved in the constitutional deprivation, or that a causal connection exists between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). A supervisor may also be liable if he/she implemented a policy so deficient that it constitutes a repudiation of constitutional rights and is the "moving force" behind the constitutional violation. *Id.* To establish supervisory liability based on policy, a plaintiff must specifically identify each policy that allegedly caused the constitutional violations. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Plaintiffs allege that MDOC, Burl Cain, John Hunt, and Tereda Hairston were official policymakers who knew of risks like solitary confinement overuse, failure to provide preventative care for suicide concerns, and failure to ensure required checks. They claim that the inaction of these defendants amounted to a "widespread policy" and was directly connected to Ms. Short's death. Plaintiffs, though, fail to identify any specific unconstitutional policy implemented by Cain, Hunt, or Hairston that directly caused Ms. Short's suicide. Plaintiffs offer a circular argument: Ms.

Short committed suicide, therefore there must have been a deficient policy or no policy at all. This logic is insufficient.

The Department of Justice Report[13], though detailing MDOC deficiencies, concluded its investigation before Ms. Short's incarceration and omits mention of any named individual defendants. This report, therefore, cannot substitute for specific factual allegations regarding personal involvement or the implementation of deliberately indifferent policies directly causing Ms. Short's death. Plaintiffs, thus, have not met the stringent standard for establishing supervisory liability.

---

[13]     The document at question, dated February 28, 2024, *Investigation of Central Mississippi Correctional Facility, South Mississippi Correctional Institution, and Wilkinson County Correctional Facility* must be construed as a study, a detailed inquiry into the problematic facets of the institutions targeted, a warning that the Justice Department may decide to file corrective suggested approaches for remedial actions and a suggested timeline by which to accomplish these aims.

The document is not a court-approved, nor court-ordered document. Its findings have not been adopted by the court. The document, thus, does not carry the force of law, only the opinions of the Justice Department and those of the United States Attorney's Office, Northern and Southern Districts of Mississippi, Civil Divisions.

Plaintiffs herein, although referring to the document, provide no telling discussion as to how the findings of tis document impact Plaintiffs' proof burden on any of Plaintiffs' causes of action. Nor do Plaintiffs provide a cogent argument for the admissibility under the rules of evidence for this document.

This document, issued February 28, 2024, precedes this lawsuit, does not embrace any factual scenario of the lawsuit sub judice, and names none of the Defendants. It is simply a possible prelude to litigation. The conclusion confirms this court's perspective and non-relevance of the document to the law and facts of this lawsuit:

VI. CONCUSION

In summary, our investigation found reasonable cause to believe  (emphasis added) that MDOC violates the constitutional rights of incarcerated persons by failing to protect incarcerated persons at Central Mississippi, South Mississippi, and Wilkinson from violence and sexual assault, and by holding incarcerated individuals at Central Mississippi and Wilkinson in prolonged restrictive housing under harsh environmental conditions and with deliberate indifference to a substantial risk of serious psychological and physical harm.

We are obligated to advise you that 49 days after issuance of this letter, the Attorney General may initiate a lawsuit (emphasis added)pursuant to CRIPA to correct deficiencies identified in this Findings Report if State officials have not satisfactorily addressed our concerns. (emphasis added).42 U.S.C. § 1997b(a)(1). The Attorney General may also move to intervene in related private suits 15 days after issuance of this Report. 42 U.S.C. § 1997c(b)(1)(A). Please also note that this Findings Report is a public document. It will be posted on the Civil Rights Division's website.

We look forward to working cooperatively with you and MDOC administrators and staff to ensure that the violations are remedied.

[Doc. 1-1, VI].

# VI.    CONCLUSION

For the reasons stated above, this Court concludes that:

All claims against the Mississippi Department of Corrections and the individual MDOC Defendants Burl Cain, John Hunt, Tereda Hairston, Benjamin Jennings, and Angela Smith in their *official* capacities are DISMISSED WITH PREJUDICE based on Eleventh Amendment immunity and the fact that they are not "persons" subject to suit under 42 U.S.C. § 1983.

The claims against the individual MDOC Defendants Burl Cain, John Hunt, and Angela Smith, in their *individual* capacities, too, are DISMISSED WITHOUT PREJUDICE for failure to overcome qualified immunity: Plaintiffs' Complaint inadequately pleads facts showing personal involvement and deliberate indifference. Moreover, Plaintiffs' Complaint amounts to a shotgun pleading.

Plaintiffs' claims against the individual MDOC Defendants Tereda Hairston and Benjamin Jennings, however, survive Defendants' Motion to Dismiss. Plaintiffs allege that Defendants Jennings and Hairston pepper-sprayed Ms. Short while she was suffering a mental health crisis. As stated supra, this Court has no information regarding the timing of this alleged incident: whether it was one month, one week, or one hour before Ms. Short's demise. The pleadings tell us, though, that Ms. Short hanged herself "less than three months into her incarceration" and that she allegedly voiced on more than one occasion a request for help. The timing of the Jennings-Hairston incident, if proven, could result in a jury verdict based upon a theory of aggravation of an already sick state of mind that led to the act of suicide. Accordingly, this Court cannot, at this stage, discredit Plaintiffs' plausible claims against these two Defendants. Plaintiffs' claims against Defendants Hairston and Jennings in their *individual* capacities shall proceed to trial.

The VitalCore Defendants (VitalCore Health Strategies, LLC, Jasmine Nelson, Kaliah Robinson, Rosalynn Allen, and Whitney A. Dixon) have not established their entitlement to Eleventh Amendment immunity.

The claims against them, however, are DISMISSED WITHOUT PREJUDICE because Plaintiffs failed adequately to plead deliberate indifference against these named VitalCore Defendants.

**SO ORDERED this the 24th day of September, 2025.**

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**

.